UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - :
KYLE JIGGETTS,                        :   10 Civ. 9082 (DAB) (JCF)
                                      :
          Plaintiff,                  :
                                      :        REPORT AND
     - against -                      :        RECOMMENDATION
                                      :
LOCAL 32BJ, SEIU, ALLIEDBARTON        :
SECURITY SERVICES and CITY OF         :
NEW YORK,                             :
                Defendants.           :
- - - - - - - - - - - - - - - - - - - :
TO THE HONORABLE DEBORAH A. BATTS, U.S.D.J.:

     Kyle Jiggetts brings this pro se complaint against
AlliedBarton Security Services, LLC ("AlliedBarton"), Local 32BJ,
SEIU (the "Union"), and the City of New York (the "City").  The
plaintiff asserts claims against AlliedBarton, his former employer,
for breach of contract under its Collective Bargaining Agreement
(the "CBA") with the Union, as well as for violating the Americans
with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. (the
"ADA").  Mr. Jiggetts also maintains that the City breached the
CBA, violated the ADA and Title VII of the Civil Rights Act of
1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and unlawfully
retaliated against him for complaining about discrimination to the
Equal Employment Opportunity Commission (the "EEOC").  Finally, the
plaintiff alleges that the Union failed in its duty of fair
representation under Section 301 of the Labor Management Relations
Act, 29 U.S.C. § 159 (the "LMRA").

     All three defendants now move to dismiss the plaintiff's
claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure.  AlliedBarton requests an injunction precluding Mr.

1

Jiggetts from filing any further lawsuits against it and also requests reimbursement for its fees and expenses incurred in filing this motion.  For the reasons that follow, I recommend that (1) each of the motions to dismiss be granted, (2) AlliedBarton's request for an injunction be granted, and (3) AlliedBarton's application for an award of attorneys' fees be denied.

<u>Background</u>

Mr. Jiggetts began working as a security guard for AlliedBarton around November 17, 2006.  (AlliedBarton Employment Application for Kyle Jiggetts dated Nov. 17, 2006 ("AlliedBarton Application"), attached to Notice of Motion to Decide Case Based on Declarations and Evidence dated Dec. 27, 2010 ("Pl. Motion")).  In February of 2008, Mr. Jiggetts was working at 280 Broadway, a building managed by the City's Department of Citywide Administrative Services ("DCAS"), when a DCAS supervisor, Maria Colon, requested that Mr. Jiggetts be removed from the site.  (Declaration of Kyle Jiggetts dated Dec. 12, 2010 ("Jiggetts 12/12/10 Decl.") ¶ 1).  As a result, AlliedBarton transferred him to another location on March 4, 2008.  (Jiggetts 12/12/10 Decl., ¶ 2).  On June 30, 2010, Mr. Jiggetts was laid off from his position as a security guard at AlliedBarton, and he has since remained unemployed.  (Complaint ("Compl."), attached as part of Exh. A to Notice and Petition of Removal dated Dec. 3, 2010 ("Removal Notice"), ¶ 6).  Since laying off Mr. Jiggetts, AlliedBarton has allegedly hired new employees and recalled security guards with less seniority.  (Declaration of Kyle Jiggetts

dated Dec. 27, 2010 ("Jiggetts 12/27/10 Decl."), ¶ 1).

On November 9, 2010, Mr. Jiggetts commenced this action in New York State Supreme Court, New York County, seeking monetary damages and an injunction enforcing the CBA. (Compl., ¶ 9; Removal Notice, ¶ 1). The defendants then removed the case to the United States District Court for the Southern District of New York. (Removal Notice). On December 30, 2010, the plaintiff filed his complaint in this Court. (Pl. Motion). In it, he claims that AlliedBarton discriminated against him because of a disability in violation of the ADA. (Compl., ¶ 3; Jiggetts 12/27/10 Decl., ¶¶ 2, 5). He also alleges a hybrid claim under the LMRA for breach of contract and violation of the duty of fair representation against AlliedBarton and the Union. (Compl., ¶¶ 4-8). In addition, the plaintiff claims that the Union colluded with the City in refusing to arbitrate an allegedly discriminatory poor work performance report made against him by the City. (Compl., ¶ 7; Jiggetts 12/27/10 Decl., ¶ 5; Memorandum of Law in Opposition to Defendants' Motion to Dismiss, attached to Notice of Motion dated Jan. 20, 2011, ¶ 4; Affirmation in Support of Opposition to Defendants' Motion to Dismiss dated Jan. 20, 2011, ¶ 2). Finally, the plaintiff contends that the City intentionally discriminated against him on the basis of race when it requested his transfer from 280 Broadway and that his transfer was in retaliation for his having filed complaints of race discrimination with the EEOC against the City and AlliedBarton. (Jiggetts 12/12/10 Decl., ¶¶ 2, 4; Jiggetts 12/27/10 Decl., ¶ 2).

Discussion

    A.   Legal Standard for Motion to Dismiss

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (per curiam); Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir. 2004). A complaint may be dismissed where it fails to plead enough facts "'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ___, ___, 129 S. Ct. 1937, 1960 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The pleading must be sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 554 (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at __, 129 S. Ct. at 1949.

However, the pleadings of a pro se party should be read "'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)). Even after Iqbal, which imposed heightened pleading standards for all complaints, pro se complaints are to be liberally construed. See Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). Dismissal of a pro se complaint

is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements.  <u>See, e.g.</u>, <u>Rodriguez v. Weprin</u>, 116 F.3d 62, 65 (2d Cir. 1997)); <u>accord</u> <u>Honig v. Bloomberg</u>, No. 08 Civ. 541, 2008 WL 8181103, at *4 (S.D.N.Y. Dec. 8, 2008), <u>aff'd</u>, 334 Fed. Appx. 452 (2d Cir. 2009).

    B.   <u>The ADA</u>

The ADA prohibits employment discrimination "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The plaintiff bears the burden of establishing a <u>prima facie</u> case of discriminatory discharge under the ADA. <u>Ryan v. Grae & Rybicki, P.C.</u>, 135 F.3d 867, 869 (2d Cir. 1998). To do so, he must show that "(1) [his] employer is subject to the ADA; (2) [he] suffers from a disability within the meaning of the ADA; (3) [he] could perform the essential functions of [his] job with or without reasonable accommodation; and (4) [he] was fired because of [his] disability." <u>Id.</u> at 869-70. An individual may qualify as disabled by showing that (1) he has a disability under 42 U.S.C. § 12102(1)(A), (2) he has "a record of" a disability under 42 U.S.C. § 12102(1)(B), or (3) he is "regarded as having" a disability under 42 U.S.C. § 12102(1)(C).

Mr. Jiggetts alleges two of the essential elements of a <u>prima facie</u> claim under the ADA: that he has a disability within the meaning of 42 U.S.C. § 12102(1)(A) or a perceived disability within the meaning of 42 U.S.C. § 12102(1)(C), and that he is objectively qualified for the position of an AlliedBarton security guard. (Compl., ¶ 3; Amended Complaint ("Am. Compl."), attached to Notice

of Motion [for] Civil Case to Remain in Federal Court After It's Amended, at 3; Jiggetts 12/27/10 Decl., ¶ 2; Resume, attached to Pl. Motion; AlliedBarton Application).   Although he has not specifically stated what his ADA-qualifying disabilities are, the plaintiff has provided evidence that he has received treatment for depression and that he is recovering from alcoholism and drug abuse. (Letter of Denise D. Foulkes dated June 17, 2008, attached to Pl. Motion; Letter of Oona O'Connell dated Oct. 7, 2005, attached to Pl. Motion).   Depression and alcoholism may qualify as impairments for the purposes of the ADA.   See Regional Economic Community Action Program, Inc. v. City of Middletown, 294 F.3d 35, 46-48 (2d Cir. 2002) (holding that individuals with alcoholism can quality as disabled under ADA); MacEntee v. IBM, __ F. Supp. 2d __, __, No. 08 Civ. 7491, 2011 WL 812395, at *5 (S.D.N.Y. March 3, 2011) ("Courts in this circuit have found that depression may qualify as a disability for purposes of the ADA.").   However, the plaintiff fails to allege a connection between his claimed disabilities and any adverse employment action taken against him. He has not provided any evidence of discriminatory treatment resulting from his depression or alcoholism, nor does he allege that his termination was in any way related to these conditions. Thus, regardless of whether Mr. Jiggetts has a disability within the meaning of the statute, he has not plausibly alleged disability discrimination under the ADA.   I therefore recommend that this claim be dismissed.

C.   <u>Duty of Fair Representation and Breach of Contract</u>

To establish a hybrid duty of fair representation/breach of contract claim, "a plaintiff must prove both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-a-vis the union member[]." <u>White v. White Rose Food</u>, 237 F.3d 174, 178 (2d Cir. 2001); <u>accord</u> <u>Sanozky v. International Association of Machinists and Aerospace Workers</u>, 415 F.3d 279, 282 (2d Cir. 2005) (citing <u>DelCostello v. International Brotherhood of Teamsters</u>, 462 U.S. 151, 164-65 (1983)).

1.   Exhaustion of Internal Union Remedies

As a preliminary matter, AlliedBarton alleges that Mr. Jiggetts has not sufficiently pled exhaustion of the available internal Union remedies for his breach of contract and duty of fair representation claims. (Defendant AlliedBarton Security Services, LLC's Memorandum of Law in Support of Its Motion to Dismiss ("AlliedBarton Memo.") at 8-9).

When adjudicating claims brought pursuant to § 301 of the LRMA, "courts have discretion to decide whether to require exhaustion of internal union procedures." <u>Clayton v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America</u>, 451 U.S. 679, 689 (1981).  When making this determination, "a court 'must balance the right of union members to institute suit against the policy of judicial noninterference in union affairs.'" <u>Maddalone v. Local 17, United Brotherhood of Carpenters and Joiners of America</u>, 152 F.3d 178, 186 (2d Cir. 1998)

7

(quoting <u>Johnson v. General Motors</u>, 641 F.2d 1075, 1079 (2d Cir. 1981)).  Three factors are pertinent to the determination:

> first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

<u>Clayton</u>, 451 U.S. at 689.

In the present matter, Mr. Jiggetts did not affirmatively plead that he has exhausted the Union's internal remedies. However, the CBA only provides information on the arbitration and grievance procedures for disputes arising between AlliedBarton and the Union.  (Collective Bargaining Agreement ("CBA"), attached as Exh. B to Declaration of André L. Lindsay dated Feb. 18, 2011, at 35 ("For the purpose of this Agreement, a 'grievance' is defined as any dispute between the Employer and the Union . . . .").  There is no other information in the record regarding the Union's procedures for handling individual Union members' complaints.  It is thus impossible to determine whether the Union's internal remedies would have been sufficient to address Mr. Jiggetts' grievances promptly and adequately, and therefore the exhaustion doctrine should not be imposed.

### 2.   Breach of Contract by AlliedBarton

Under New York law, a claim for breach of contract has four elements: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of

contract by the defendant, and (4) damages." <u>Eternity Global</u>
<u>Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York</u>, 375 F.3d
168, 177 (2d Cir. 2004).

Mr. Jiggetts alleges that AlliedBarton breached the CBA by (1)
denying him the standard wages of a Level II Security Guard despite
his having the requisite qualifications for that position, (2)
failing to recall him from unemployment while recalling less senior
workers, and (3) declining "to go to arbitration" in response to an
allegedly discriminatory poor work performance report from the
City. (Compl., ¶¶ 5-7).[1]  I will address each allegation in turn.

a.   <u>Entitlement to Level II Wages</u>

In a previous case brought by the plaintiff against
AlliedBarton, the Court found that Mr. Jiggetts was not entitled to
the wages of a Level II AlliedBarton Security Guard because,
pursuant to the terms of the CBA, his qualifications only entitled
him to consideration for that designation, not automatic
appointment to it. (Report and Recommendation dated Aug. 19, 2010
("8/19/10 R&R"), attached as Exh. L to Declaration of Janet B. Linn
dated Dec. 21, 2010, at 14-15, <u>report and recommendation adopted</u>,
Order dated Sept. 7, 2010 at 14-15, No. 08 Civ. 4371).  In the
instant matter, Mr. Jiggetts asserts the identical claim: that he
is entitled to the wages of a Level II AlliedBarton Security Guard
because he satisfies the minimum qualifications for the position.
(Compl., ¶ 5).  Because this issue has already been decided against

---

[1] Although Mr. Jiggetts also alleges that the City breached
the CBA, the City was not a party to that contract.

Mr. Jiggetts in <u>Jiggetts v. AlliedBarton</u>, No. 08 Civ. 4371, his claim is precluded from consideration here by the doctrine of collateral estoppel.  <u>See</u> <u>Republic of Ecuador v. Chevron Corp.</u>, 638 F.3d 384, 400 (2d Cir. 2011) ("Collateral estoppel bars relitigation of an issue that has already been fully and fairly litigated in a prior proceeding." (internal quotation marks omitted)).

   b.   <u>Recall from Layoff</u>

   The plaintiff alleges that AlliedBarton violated the CBA by hiring new security guards and recalling less senior guards to work without recalling him first.  (Compl., ¶ 6; Jiggetts 12/27/10 Decl., ¶ 1).   The CBA itself, however, does not require AlliedBarton to recall former employees solely on the basis of their seniority.   Instead, it provides that seniority only determines the order of recall only if (1) "all other job-related factors are equal," and (2) the employee with greater seniority is, "in the sole and exclusive opinion of" AlliedBarton, "qualified, suitable, and available to work."  (CBA at 18).  Accordingly, the plaintiff's interpretation of the CBA fails; AlliedBarton is not contractually obligated to recall him to work.   I therefore recommend that this claim be dismissed.

   c.   <u>Arbitration Over Work Performance</u>

   Mr. Jiggetts contends that it was a breach of the CBA for AlliedBarton to "refuse to go to arbitration on [his] behalf to investigate" allegations of "poor work performance [made] by the City of New York."  (Compl., ¶¶ 7-8).  The CBA, however, only

provides a grievance and arbitration system for "dispute[s] between the Employer and the Union." (CBA at 35).  The plaintiff does not suggest that criticism of him by DCAS could possibly fall into the category of a dispute between AlliedBarton and the Union.  Thus, AlliedBarton is not contractually obligated by the CBA to go to arbitration over the plaintiff's complaint regarding the DCAS official's statement, and I recommend that this claim be dismissed.

        3.   <u>The Union's Duty of Fair Representation</u>

        The plaintiff's complaint alleges that the Union breached its duty of fair representation by (1) failing to represent him against AlliedBarton following its refusal to pay him Level II wages or recall him to work, and (2) "refus[ing] to go to arbitration on [his] behalf to investigate" the City's "discriminatory allegation[]" that his work performance was poor.  (Compl., ¶ 7; Jiggetts 12/27/10 Decl., ¶ 5).

        To state a claim for a violation of the duty of fair representation, the plaintiff must allege that (1) the union's "actions or inactions are either arbitrary, discriminatory, or in bad faith" and (2) "a causal connection between the union's wrongful conduct and their injuries." <u>Vaughn v. Air Line Pilots Association, International</u>, 604 F.3d 703, 709 (2d Cir.) (internal quotation marks omitted), <u>aff'd</u>, 377 Fed. Appx. 88 (2d Cir. 2010). A union's actions are arbitrary if its conduct is "'so far outside a wide range of reasonableness . . . as to be irrational.'" <u>Drakakis v. ABM Janitorial Services-Northeast, Inc.</u>, No. 09 Civ. 1883, 2011 WL 1219843, at *6 (S.D.N.Y. March 24, 2011) (alteration

in original) (quoting <u>Air Line Pilots Association, International v. O'Neill</u>, 499 U.S. 65, 67 (1991)) (internal quotation marks omitted). "'Bad faith requires a showing of fraudulent, deceitful, or dishonest action.'" <u>White</u>, 237 F.3d at 179 (quoting <u>Sim v. New York Mailers' Union Number 6</u>, 166 F.3d 465, 472 (2d Cir. 1999)).

Here, the plaintiff's allegations are insufficient to state a valid claim against the Union. A "[p]laintiff must set forth concrete, specific facts from which one can infer a union's . . . discrimination, bad faith, . . . or arbitrary exercise of discretion. Conclusory allegations, without specifying supporting facts . . . , fail to state a valid claim." <u>Lapir v. Maimonides Medical Center</u>, 750 F. Supp. 1171, 1177 (E.D.N.Y. 1990); <u>see also</u> <u>Vaughn</u>, 604 F.3d at 711-12 (affirming dismissal of duty of fair representation claim because plaintiffs "failed to plausibly allege" how union's "alleged bad faith" caused their damages); <u>Dennis v. Local 804</u>, No. 07 Civ. 9754, 2009 WL 1473484, at *5 (S.D.N.Y. May 27, 2009) ("Plaintiffs' obligation to plead sufficient conduct to support an unfair representation claim has been characterized as an enormous burden." (internal quotation marks omitted)).

There is an utter dearth of factual allegations in Mr. Jiggett's pleadings to support his duty of fair representation claim. He does not allege any facts suggesting that the Union's refusal to represent him was arbitrary, discriminatory, or in bad faith. At one point he accuses the Union of "collusion" with AlliedBarton in a conspiracy to deny representation to

AlliedBarton's employees and provides the declarations of two former colleagues making similar allegations. (Declaration of Kyle Jiggetts dated Jan. 20, 2011, ¶ 2; Declaration of Cynthia Tompkins dated Jan. 18, 2011; Declaration of Donna Leak dated Jan. 17, 2011). However, these conclusory accusations are unsupported by any specific evidence, such as the nature of the grievances in question or the Union's grounds for refusing to pursue them. Thus, Mr. Jiggetts' allegations are simply not enough, even given the lenity provided for a <u>pro</u> <u>se</u> plaintiff, to infer that the Union's conduct was so arbitrary, discriminatory, or in bad faith that it failed to represent him adequately.

Moreover, it is well settled that a union's duty of fair representation does not require it to pursue employees' complaints regardless of their merit. <u>See</u> <u>Vaca v. Sipes</u>, 386 U.S. 171, 191 (1967) ("The individual employee [does not have] an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement."); <u>Scott v. New York Health and Human Services Union, 1199/SEIU</u>, No. 00 Civ. 9381, 2003 WL 359534, at *6 (S.D.N.Y. Feb. 6, 2003) ("A union need not pursue a grievance that it believes meritless."). As discussed above, Mr. Jiggetts' complaints against AlliedBarton fail because he has not alleged any actions by AlliedBarton that violate the CBA. The Union therefore did not violate its duty of fair representation by refusing to represent Mr. Jiggetts in these meritless claims. For both of these reasons, I recommend that the plaintiff's claim be dismissed.

D.   <u>Title VII</u>

Mr. Jiggetts asserts that the City has "a practice of intentional discrimination against African [A]merican security guards." (Jiggetts 12/12/10 Decl., ¶ 4). He also alleges that the City retaliated against him for filing a discrimination complaint by requesting his transfer away from the DCAS-managed site at 280 Broadway. (Jiggetts 12/12/10 Decl., ¶¶ 1-2). Additionally, Mr. Jiggetts alleges that AlliedBarton continues to deny him training because it is retaliating against him for the same discrimination complaint he filed with the EEOC alleging the same acts of discrimination. (Jiggetts 12/27/10 Decl., ¶ 2).

1.   <u>Claims Against the City</u>

a.   Conversion into a Motion for Summary Judgment

"When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." <u>Calcutti v. SBU, Inc.</u>, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (quoting <u>Friedl v. New York</u>, 210 F.3d 79, 83 (2d Cir. 2000)); <u>see also</u> Fed. R. Civ. P. 12, 56.

In the present matter, the City has submitted a contract that covers the placement of AlliedBarton security guards during the period the plaintiff worked at the DCAS site at 280 Broadway. (Contract between AlliedBarton and the Department of Citywide Administrative Services ("Placement Contract"), attached to letter

14

of André L. Lindsay dated June 27, 2011).  The Placement Contract was not referred to in the plaintiff's pleadings or response and thus is not incorporated by reference; it is therefore extraneous to the pleadings presented in response to the City's motion to dismiss.  Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure and Rule 12.1 of the Local Civil Rules of the United States District Court for the Southern and Eastern Districts of New York, the City notified Mr. Jiggetts that the motion to dismiss could be converted to a motion for summary judgment.  (Notice to Pro Se Litigant Opposing Motion to Dismiss dated Feb. 18, 2011).  The City's motion to dismiss the plaintiff's Title VII and retaliation claims is therefore converted to a motion for summary judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute regarding a material fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009), and a material fact is one that "'might affect the outcome of the suit under the governing law.'"  Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008) (quoting Anderson, 477 U.S. at 248).  In assessing the record to determine whether there is a genuine issue of material fact, the court "must resolve all

ambiguities and draw all factual inferences in favor of the nonmoving party." McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006).

The moving party bears the initial burden of identifying "the absence of a genuine issue of material fact," Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), following which the opposing party must come forward with specific facts showing a genuine issue for trial. The parties can support their claims with discovery materials, stipulations, affidavits, or other evidence, see Fed. R. Civ. P. 56(c)(1)(A); however, "'only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment,'" Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 264 (2d Cir. 2009) (quoting Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997)), cert. denied, __ U.S. __, 131 S. Ct. 79, __ U.S. __, 131 S. Ct. 122 (2010). Thus, the parties cannot rely on "'conclusory allegations or unsubstantiated speculation'" to support or defeat a motion for summary judgment. Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (quoting Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 428 (2d Cir. 2001)).

Where a litigant is pro se, his pleadings should be read liberally and interpreted "'to raise the strongest arguments that they suggest.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)); accord Belpasso v. Port Authority of New York and New Jersey, 400 Fed. Appx. 600, 601 (2d Cir. 2010). Nevertheless, proceeding pro se does not relieve a litigant from the usual requirements of

summary judgment, and a <u>pro</u> <u>se</u> party's "'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." <u>Lee v. Coughlin</u>, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting <u>Carey v. Crescenzi</u>, 923 F.2d 18, 21 (2d Cir. 1991)).

        b.  <u>The Merits</u>

          i.  <u>Employment Relationship</u>

The City first moves to dismiss the plaintiff's Title VII claims on the ground that Mr. Jiggetts was not its employee. (Defendant City of New York's Memorandum of Law in Support of Its Motion to Dismiss at 4-5).

Title VII prohibits discriminatory employment practices on the basis of race and other impermissible classifications. <u>See</u> 42 U.S.C. § 2000e-2(a). It is "'an <u>employment</u> law, available only to employees (or prospective employees) seeking redress for the unlawful employment practices of the employers.'" <u>Simpson v. New York State Department of Civil Service</u>, No. 03 Civ. 9433, 2004 WL 2222163, at *2 (S.D.N.Y. Sept. 30, 2004) (quoting <u>Kern v. City of Rochester</u>, 93 F.3d 38, 45 (2d Cir. 1996)). Thus, to maintain an action under Title VII, an employer-employee relationship must have existed between the parties.

Under Title VII, the term 'employer' is "sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, regardless of whether that party may technically be described as an 'employer' of an aggrieved individual as that term has generally been defined at common law."

17

Bampoe v. Coach Stores, Inc., 93 F. Supp. 2d 360, 370-71 (S.D.N.Y. 2000) (quoting Spirt v. Teachers Insurance and Annuity Association, 691 F.2d 1054, 1063 (2d Cir. 1982)); see also Laurin v. Pokoik, No. 02 Civ. 1938, 2004 WL 513999, at *4 (S.D.N.Y. March 15, 2004) ("The term 'employer' has been construed liberally under Title VII, and does not require a direct employer/employee relationship."); Lans v. Kiska Construction Corp., No. 96 Civ. 4114, 1997 WL 313162, at *4 (S.D.N.Y. April 18, 1997) ("[I]n assessing whether a defendant is an 'employer' within the meaning of Title VII . . . particular emphasis is placed on a defendant's right to control the 'manner and means' by which work is accomplished." (quoting Frankel v. Bally, Inc., 987 F.2d 86, 90 (2d Cir. 1993))). "A joint employer relationship may be found to exist where there is sufficient evidence that [one entity] had immediate control over the other company's employees" and that the two companies shared responsibilities such as "commonality of hiring, firing, discipline, pay, insurance, records, and supervision." Woodman v. WWOR-TV, Inc., 411 F.3d 69, 89 (2d Cir. 2005) (alteration in the original) (quoting NLRB v. Solid Waste Services, Inc., 38 F.3d 93, 94 (2d Cir. 1994)); see also Nelson v. Beechwood Organization, No. 03 Civ. 4441, 2004 WL 2978278, at *4 (S.D.N.Y. Dec. 21, 2004) ("The 'joint employer' doctrine assumes the two employers are in fact separate legal entities, but inquires whether they have 'chosen to handle certain aspects of their employer-employee relationships jointly.'" (quoting Clinton's Ditch Cooperative Co. v. NLRB, 778 F.2d 132, 137 (2d Cir. 1985))); Arculeo v. On-Site Sales &

18

Marketing, LLC, 321 F. Supp. 2d 604, 608 (S.D.N.Y. 2004) ("The joint employer doctrine is applicable when the separate businesses at issue have become associated with one another via a contractual relationship."), aff'd, 425 F.3d 193 (2d Cir. 2005).

Here, the record does not conclusively show whether the City was a joint employer with AlliedBarton. The CBA between AlliedBarton and the Union provides AlliedBarton with exclusive control over the most significant aspects of the security guards' employment: the right to "manage and direct" its employees with respect to hiring, firing, discipline, and involuntary transfers. (CBA at 13-14). The Placement Contract between AlliedBarton and the City stipulates that AlliedBarton must provide on-site supervisors to supervise the AlliedBarton security guards assigned to City sites. (Placement Contract at 3, ¶ 9). However, the Placement Contract also reserves several important management rights to the City: the right to interview AlliedBarton executives in order to determine how guards are placed, the right to interview each individual guard pending approval, and the right to reject any proposed guards on the weekly roster. (Placement Contract at 1-2, ¶¶ 1.5, 1.8). Given that there is some evidence suggesting the City had control over how the security guards were placed on its sites, the City is not entitled to summary judgment on the basis of the purported lack of an employment relationship with the plaintiff. However, this finding is not dispositive of the City's motion to dismiss because, as discussed below, Mr. Jiggett's claims of discrimination and retaliation pursuant to Title VII are fatally

flawed.

## ii.   Race Discrimination

To state a prima facie case of race discrimination under Title VII, a plaintiff must show "(1) that he was a member of a protected group; (2) that he was qualified for the job in question; (3) that the defendant took an adverse employment action against him; and (4) that the circumstances support an inference of discrimination on the basis of his membership in that protected class." Gibbs v. City of New York, No. 02 Civ. 2424, 2005 WL 497796, at *6 (S.D.N.Y. Jan. 21, 2005) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).  A plaintiff opposing a motion for summary judgment must "produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action."  Weinstock v. Columbia University, 224 F.3d 33, 42 (2d Cir. 2000) (internal quotation marks omitted).

In connection with his Title VII complaint, Mr. Jiggetts makes conclusory statements that the City discriminates on the basis of race; however, he entirely fails to specify how the City's alleged discrimination affected him.  (Jiggetts 12/12/10 Decl., ¶ 4 ("the City of New York [has] a practice of intentional discrimination against African [A]merican security guards")).  Mr. Jiggetts also does not state what adverse employment action, if any, he suffered in connection with the alleged discrimination, how he may have been treated differently, or how he was in any way affected by race

20

discrimination.   The only possible adverse employment action
suggested in connection with race discrimination is found in a
declaration from one the plaintiff's colleagues, Donna Leak, which
is attached to the pleadings but elsewhere contradicted by the
plaintiff himself.  The declaration states that "[t]he City or DCAS
has written contractual policies that [say] that they can remove a
security guard or bar or ban a security guard from City sites.
DCAS [uses] these policies to discriminate against African American
security guards."  (Declaration of Donna Leak dated Dec. 24, 2010,
¶ 4).  Elsewhere in his complaint, however, Mr. Jiggetts attributes
his transfer to his work performance and history of prior lawsuits:

> Maria O. Colon told Joe Bascillio that I couldn't work at
> 280 Broadway because I sued her and DCAS. . . .  Before
> my shift ended, Marvin Roach and Jennifer Sakora said
> that Mike Sicilano and Commissioner Martha Hirst said
> that I couldn't work there.  This was retaliation for
> complaining about discrimination to the EEOC.   I was
> actually terminated.  I was removed from 280 Broadway on
> March 4, 2008. Jennifer Sakora told me that the City
> didn't want me in DCAS because I did something bad when
> I used to work for Tristar.

(Jiggetts 12/12/10 Decl., ¶¶ 1-2).  These alternate explanations do
not support an inference that Mr. Jiggetts suffered any
discriminatory adverse employment action, and the pleadings do not
suggest any other adverse employment action in connection with his
conclusory race discrimination complaint.   For the foregoing
reasons, the plaintiff has not presented facts adequate to
establish a prima facie case of Title VII discrimination, and
summary judgment should be granted to the City.

### iii. Retaliation

Mr. Jiggetts alleges that the City requested his transfer away

from 280 Broadway in retaliation for the discrimination complaints he filed against AlliedBarton with the EEOC.  (Jiggetts 12/12/10 Decl., ¶ 2 ("Before my shift ended, Marvin Roach and Jennifer Sakora said that Mike Sicilano [the DCAS deputy commissioner] and Commissioner Martha Hirst said that I couldn't work there.  This was retaliation for complaining about discrimination to the EEOC.")).

"'To establish a <u>prima</u> <u>facie</u> case of retaliation under Title VII, a plaintiff is required to show by a preponderance of the evidence: (1) that he participated in a protected activity; (2) the defendant knew of the protected activity; (3) he experienced an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action.'" <u>Matya v. United Refining Co.</u>, 323 Fed. Appx. 65, 67 (2d Cir. 2009) (quoting <u>Cifra v. General Electric Co.</u>, 252 F.3d 205, 216 (2d Cir. 2001)).  An adverse employment action occurs where the plaintiff experiences "a materially adverse change in the terms and conditions of employment." <u>Galabya v. New York City Board of Education</u>, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted).  To be "'materially adverse,'" the change cannot be "'a mere inconvenience'" or "'alteration of job responsibilities'"; rather, it must be akin to a termination, a demotion accompanied by loss of wages, or a material loss of title, benefits, or responsibilities. <u>Id.</u> (quoting <u>Crady v. Liberty National Bank and Trust Co.</u>, 993 F.2d 132, 136 (7th Cir. 1993)); <u>accord</u>  <u>De la Cruz v. City of New York</u>, __ F. Supp. 2d __, __, No. 09 Civ. 4905, 2011

WL 1453796, at *11 (S.D.N.Y. April 7, 2011).

Here, Mr. Jiggetts has not presented any facts or argument suggesting that his transfer constituted a materially adverse change in the nature of his employment. As far as I can discern, Mr. Jiggetts did not lose any benefits or suffer any other material changes as a result of his transfer from 280 Broadway to the New York City Department of Juvenile Justice. Arguably, this appears to be a positive employment action, since the plaintiff's commute to the New York City Department of Juvenile Justice, the workplace to which he was transferred, was significantly shorter than his commute to 280 Broadway. (See 8/19/10 R&R at 8 ("[W]hen he was transferred to Juvenile Justice and DOE, his commute was shorter, and he only had to travel one subway stop from his home.")). As such, Mr. Jiggetts has failed to show that his transfer from 280 Broadway was an adverse employment action. See Como v. O'Neill, No. 02 Civ. 985, 2002 WL 31729509, at *2 (S.D.N.Y. Dec. 4, 2002) (finding summary judgment appropriate where plaintiff's transfer did not result in material adverse changes to his employment). Therefore, the plaintiff's Title VII retaliation claim should be dismissed.

### 2.   Claim Against AlliedBarton

Mr. Jiggetts also alleges a Title VII retaliation claim against AlliedBarton, stating that "Allied-Barton is . . . retaliating against me because I complained about discrimination. I'm denied training because of retaliation and discrimination." (Jiggetts 12/27/10 Decl., ¶ 2). The plaintiff desires to be

recalled from unemployment to receive further training.  (Jiggetts 12/27/10 Decl., ¶ 1).  However, AlliedBarton is not contractually bound to recall Mr. Jiggetts for employment, and thus Mr. Jiggetts is not entitled to further training from AlliedBarton.  And, as discussed above, the plaintiff has not alleged any adverse employment action in connection with his Title VII retaliation.  Therefore, this claim should be dismissed.

    E.   <u>AlliedBarton's Requested Relief</u>

    AlliedBarton has requested that this Court enjoin Mr. Jiggetts from filing future lawsuits against AlliedBarton and award it reasonable attorneys' fees and expenses.  (AlliedBarton Memo. at 11-14).  For the reasons set forth below, I recommend that no award of attorneys' fees be made but that Mr. Jiggetts be enjoined from further federal litigation against AlliedBarton related to these matters without prior leave of the court.

    1.   <u>Attorneys' Fees</u>

    Because the plaintiff's claims against AlliedBarton are without reasonable basis in fact or in law, an award of attorneys' fees would be warranted.  <u>See</u> <u>Sassower v. Field</u>, 973 F.2d 75, 80-81 (2d Cir. 1992).  However, since any award of fees should be tempered to take into account the offending party's ability to pay, the Court should exercise its discretion and decline to grant fees here.  <u>See</u> <u>Oliveri v. Thompson</u>, 803 F.2d 1265, 1281 (2d Cir. 1986).  Mr. Jiggetts appears to have no resources whatsoever, and the grant of an uncollectible judgment against him would neither serve as a deterrent nor provide compensation to AlliedBarton.

        2.    <u>Injunctive Relief</u>

    At the same time, recognizing the significant number of meritless claims that Mr. Jiggetts has filed against AlliedBarton in connection with his termination and the ineffectiveness of any fee award as a deterrent, it is necessary to provide some protection to AlliedBarton in order to prevent Mr. Jiggetts from continuing to cause it to expend resources fending off meritless litigation.  Where a litigant has used the courts as a tool for harassment and threatens to continue to do so, access to the courts may be limited.  <u>See In re Martin-Trigona</u>, 737 F.2d 1254, 1261-62 (2d Cir. 1984); <u>Colida v. Nokia Inc.</u>, No. 07 Civ. 8056, 2008 WL 4517188, at *13-15 (S.D.N.Y. May 6, 2008), <u>report and recommendation adopted in pertinent part</u>, 2008 WL 4449419 (S.D.N.Y. Sept. 29, 2008), <u>aff'd</u>, 347 Fed. Appx. 568 (2d Cir. 2009).  This is such a case.

    Mr. Jiggetts has a significant history of filing <u>pro</u> <u>se</u> claims, with at least thirteen separate <u>pro</u> <u>se</u> lawsuits in federal court. (AlliedBarton Memo. at 1-3).  The plaintiff's three prior lawsuits against AlliedBarton, which included Title VII and ADA claims, have all been unsuccessful. (AlliedBarton Memo. at 2).  Accordingly, an injunction should be issued that balances the plaintiff's right to access to the courts against AlliedBarton's need to be protected against further harassment.  I therefore recommend that Mr. Jiggetts be enjoined from filing any further suits against AlliedBarton in any federal court regarding the subject matter of these lawsuits unless he first obtains leave of

                                25

the court.   Any application for leave to proceed should be accompanied by a copy of the injunction so that the reviewing judge is made aware of the history of this litigation.

Conclusion

For the reasons set forth above, I recommend that the defendants' motions be granted and the plaintiff's claims dismissed, that AlliedBarton's request for reasonable attorneys' fees be denied, and that AlliedBarton be granted an injunction against further litigation by the plaintiff regarding his employment with the company.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.   Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Deborah A. Batts, Room 2510 and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.   This Report and Recommendation addresses the motions identified as Docket Nos. 4, 9, 10, 13, 19, 21, 24, 26, 28, and 30.[2]

---

[2] Mr. Jiggetts has filed a number of mis-titled motions seeking to have the defendants' motions to dismiss denied, to have judgment entered in his favor, and to have all or some portion of this case dismissed so that he can pursue similar claims in state court.   This Report and Recommendations addresses all of these motions or renders them moot.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:     New York, New York
           August 10, 2011


Copies mailed this date:

Kyle Jiggetts
1595 Unionport Road, Apt. 9D
Bronx, New York 10482

Lyle D. Rowen, Esq.
Service Employees International Union,
Local 32BJ, AFL-CIO
101 Avenue of the Americas
New York, New York 10013

Janet B. Linn, Esq.
Eckert Seamans Cherin & Mellott LLC
10 Bank Street, Suite 1061
White Plains, New York 10606

Matthew D. Crawford, Esq.
Martenson, Hasbrouck & Simon LLP
3379 Peachtree Road, N.E., Suite 400
Atlanta, GA 30326

André L. Lindsay, Esq.
Assistant Corporation Counsel
100 Church Street
New York, New York 10007

27